UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PHILLIP DOYLEY and LATOYA DOYLEY,
Individually and as Parent and Natural Guardian of
K.G., an Infant Under the Age of Fourteen Years,

                Plaintiffs,

    - against -

DETECTIVE BRANDON AGOSTO, Shield No. 1084,
DETECTIVE RAMON GARCIA, Shield No. 6082,
DETECTIVE ETASHAM KHAN, Shield No. 2329,
CAPTAIN RODERICK DANTINI,
DETECTIVE HOWARD KWOK, Shield No. 4766,
DETECTIVE DEREK SAMBOLIN, Shield No. 6902,
DETECTIVE VINCENT FERRANTE, Shield No. 6560,
DETECTIVE EDWARD WASHA, Shield No. 4252,
DETECTIVE WARREN BROWN, Shield No. 4570,
CAPTAIN PAUL MUGGEO,
DETECTIVE STEPHEN JONES, Shield No. 790 and
THE CITY OF NEW YORK,

                Defendants.
-------------------------------------------------------------------X

20 CV 3109 (EK) (PK)

AMENDED
COMPLAINT AND
JURY TRIAL DEMAND

      Plaintiffs, PHILLIP DOYLEY and LATOYA DOYLEY, individually and as parent

and natural guardian of K.G., an infant under the age of fourteen years, by their

attorney, ALAN D. LEVINE, ESQ., complaining of the defendants herein, respectfully

allege as follows:

## JURISDICTION

    1.    This is a civil action, seeking compensatory damages, punitive damages

and attorney's fees.

    2.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the

fourth and fourteenth amendments to the Constitution of the United States.

    3.    Jurisdiction is founded upon 28 U.S.C. §§1331, 1343 and 1367.

4.      Plaintiffs, invoking the supplemental jurisdiction of this Court, also seek compensatory and punitive damages for false arrest.

## VENUE

5.      Venue is properly alleged in the Eastern District of New York in that the acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

6.      Plaintiffs hereby demand a trial by jury of all issues in this action that are so triable.

## PARTIES

7.      At all times relevant hereto, plaintiff PHILLIP DOYLEY was and is a natural person, resident in the County of Queens, City and State of New York.

8.      At all times relevant hereto, plaintiff LATOYA DOYLEY was and is a natural person, resident in the County of Queens, City and State of New York.

9.      At all times relevant hereto, the infant plaintiff, K.G., was and is a natural person under the age of fourteen years, resident in the County of Queens, City and State of New York.

10.      At all times relevant hereto, plaintiff LATOYA DOYLEY was and is the parent and natural guardian of the infant plaintiff K.G.

11.      At all times relevant hereto, plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY were and are husband and wife.

12.      At all times relevant hereto, defendant DETECTIVE BRANDON AGOSTO, Shield No. 1084 (hereinafter "AGOSTO") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

13.     At all times relevant hereto, defendant DETECTIVE RAMON GARCIA, Shield No. 6082 (hereinafter "GARCIA") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

14.     At all times relevant hereto, defendant DETECTIVE ETASHAM KHAN, Shield No. 2329 (hereinafter "KHAN") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

15.     At all times relevant hereto, defendant CAPTAIN RODERICK DANTINI (hereinafter "DANTINI") was and is a natural person, employed as a captain by the Police Department of defendant CITY OF NEW YORK.

16.     At all times relevant hereto, defendant DETECTIVE HOWARD KWOK, Shield No. 4766 (hereinafter "KWOK") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

17.     At all times relevant hereto, defendant DETECTIVE DEREK SAMBOLIN, Shield No. 6902 (hereinafter "SAMBOLIN") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

18.     At all times relevant hereto, defendant DETECTIVE VINCENT FERRANTE, Shield No. 6563 (hereinafter "FERRANTE") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

19.     At all times relevant hereto, defendant DETECTIVE EDWARD WASHA, Shield No. 790 (hereinafter "WASHA") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

20.     At all times relevant hereto, defendant DETECTIVE WARREN BROWN, Shield No. 4570 (hereinafter "BROWN") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

21.    At all times relevant hereto, defendant CAPTAIN PAUL MUGGEO (hereinafter "MUGGEO") was and is a natural person, employed as a captain by the Police Department of defendant CITY OF NEW YORK.

22.    At all times relevant hereto, defendant DETECTIVE STEPHEN JONES, Shield No. 4252 (hereinafter "JONES") was and is a natural person, employed as a detective by the Police Department of defendant CITY OF NEW YORK.

23.    At all times relevant hereto, defendant CITY OF NEW YORK was and is a municipal corporation, organized and existing pursuant to the laws of the State of New York.

24.    The defendants are sued in their individual capacities.

25.    On or about June 12, 2019, this date being within ninety (90) days after the claims herein sued upon accrued, plaintiffs served upon the Comptroller of the City of New York a verified written notice of claim setting forth the time, place, nature and manner in which said claim arose.

26.    More than thirty (30) days have elapsed since the aforementioned verified notice of claim was served and the Comptroller has neglected and refused to make payment of said claim.

27.    This action is commenced within one year and ninety days from the date the supplemental claims herein accrued.

### AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. §1983)

28.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "27" hereinabove as if more fully set forth at length herein.

29.     At all times relevant hereto, plaintiffs resided in a single-family home, owned by plaintiff PHILLIP DOYLEY, and located at 135-16 221st Street, Springfield Gardens, County of Queens, City and State of New York (hereinafter "subject premises").

30.     On or about April 13, 2019, at approximately 6:00 A.M., all three plaintiffs and one other child of plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY, who was seven months old at the time, were all asleep in their beds on the second floor of the subject premises.

31.     At the aforementioned time, the individual defendants, all wearing black uniforms and face shields, broke down the front door of the subject premises and, several of them brandishing weapons, came storming up the stairs to the second floor.

32.     One of the individual defendants pointed his weapon at plaintiff PHILLIP DOYLEY and shouted, "Get on the floor!"

33.     Plaintiff PHILLIP DOYLEY, who had been awakened by the sound of the front door of his home being smashed in by the individual defendants, got down on the floor and put his hands behind his back.

34.     Plaintiff LATOYA DOYLEY was now awakened.

35.     Plaintiff LATOYA DOYLEY was not dressed.

36.     One of the individual defendants pointed a gun at her and ordered her to get down on the floor.

37.     The infant plaintiff was awakened and came into plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY's bedroom.

38.     One or more of the individual defendants rear-handcuffed plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY.

39.     Plaintiff LATOYA DOYLEY told the infant plaintiff, who, upon information and belief, was seven years old, to hold and care for the baby.

40.     An individual defendant said to plaintiff PHILLIP DOYLEY, "We're not here for you. Is Andrew home?"

41.     Plaintiff PHILLIP DOYLEY's adult son, Andrew Doyley, who lived with them at the subject premises, was not at home.

42.     Plaintiff PHILLIP DOYLEY informed the aforementioned individual defendant that Andrew was not at home.

43.     Plaintiff PHILLIP DOYLEY asked the aforementioned individual defendant to show him a warrant.

44.     Defendant AGOSTO had obtained, and was in possession of, a search warrant for the plaintiffs' home, which did not contain the name of any individual subject.

45.     However, the aforementioned individual defendant responded that he would show plaintiff PHILLIP DOYLEY a warrant at a later time.

46.     One of the individual defendants asked where Andrew Doyley was.

47.     Plaintiff PHILLIP DOYLEY told this individual defendant that he was not sure where Andrew was.

48.     This individual defendant asked plaintiff PHILLIP DOYLEY to tell him the location of Andrew's room.

49.     Plaintiff PHILLIP DOYLEY informed this defendant where Andrew's room was located, downstairs on the first floor of the subject premises.

50.     The defendant in question went downstairs and, with other defendants, searched the first floor, but Andrew Doyley was not present.

51.   Despite the fact that Andrew Doyley, the person whom the individual defendants were seeking, was not in the subject premises, the individual defendants did not leave.

52.   Rather, the defendant who had demanded the location of Andrew's room came back up the stairs to the second floor and asked plaintiff PHILLIP DOYLEY if he knew Andrew's cell phone number.

53.   Plaintiff PHILLIP DOYLEY answered in the affirmative.

54.   The said defendant ordered plaintiff PHILLIP DOYLEY to use his own cell phone to call his son Andrew and tell him to come home.

55.   This defendant told plaintiff PHILLIP DOYLEY that if he did not comply with his order and do exactly what he was told, he and his wife would be arrested and their infant children would be taken from them and be placed into the custody of the New York City Administration for Children's Services.

56.   In the face of the aforementioned threats, plaintiff PHILLIP DOYLEY telephoned his son Andrew.

57.   Pursuant to the orders of this defendant, plaintiff PHILLIP DOYLEY had put his phone on "speaker."

58.   Plaintiff PHILLIP DOYLEY reached Andrew and told him to come home but, as ordered by the said defendant, did not tell him that there were police officers waiting for him, instead telling him he was needed to babysit.

59.   Once plaintiff PHILLIP DOYLEY had completed the aforementioned telephone call, he was taken outside to the street, in handcuffs.

60.     Plaintiff LATOYA DOYLEY, still rear-handcuffed, and still unclothed, remained in her bedroom with her two infant children, one of whom is the infant plaintiff, and a male defendant present.

61.     Once plaintiff PHILLIP DOYLEY was taken outside of his home, the individual defendant who had ordered him to call Andrew put him in a New York City Police Department van.

62.     The aforementioned van was driven three blocks away from the family's home by another of the individual defendants, upon information and belief, defendant KHAN.

63.     After a period of time, when Andrew had not arrived home, the defendant who had put plaintiff PHILLIP DOYLEY in the van ordered him to call his son again.

64.     The aforementioned defendant handed plaintiff PHILLIP DOYLEY's cell phone to the aforementioned driver of the van and instructed him to have plaintiff PHILLIP DOYLEY call his son Andrew continually until Andrew came home.

65.     The defendant who put plaintiff PHILLIP DOYLEY in the van also instructed plaintiff PHILLIP DOYLEY to continue telling a false story to his son Andrew in order to entice him into returning home.

66.     Following a total of nine telephone calls made to Andrew Doyley by plaintiff PHILLIP DOYLEY between 6:17 A.M. and 8:49 A.M., Andrew arrived home in a taxicab.

67.     Andrew Doyley was placed under arrest.

68.     Once Andrew had arrived home and had been placed under arrest, plaintiff PHILLIP DOYLEY and plaintiff LATOYA DOYLEY had their handcuffs removed.

69.     Plaintiff LATOYA DOYLEY had been able to put some clothes on with the assistance of the defendant who had been guarding her, which she found embarrassing.

70.     Once the handcuffs had been removed, the defendant who had been in charge of the telephone calling produced the search warrant and instructed both plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY to sign it.

71.     Plaintiff LATOYA DOYLEY refused to sign the aforementioned document, whereupon the aforementioned defendant stated, "Everything can go a different way. We can still call ACS for the kids."

72.     Faced with the aforementioned repeated threat to take their children, plaintiff PHILLIP DOYLEY signed the aforementioned document.

73.     The individual defendants left plaintiffs' house at approximately 9:30 A.M.

74.     Once the individual defendants had vacated the premises, plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY walked around their house and saw that the individual defendants had opened and emptied the contents of their refrigerator and kitchen cabinets and had trashed Andrew's room.

75.     The individual defendants violated plaintiffs' rights, guaranteed to them by the fourth and fourteenth amendments to the Constitution of the United States in that, while acting under color of state law, they, after learning that a person of interest was not present in plaintiffs' home, remained therein, kept all three plaintiffs confined; kept plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY handcuffed; kept plaintiff LATOYA DOYLEY unclothed for a period of time in the presence of a male defendant; threatened to take their children from them, including the infant plaintiff and a seven-month-old baby; forced, compelled and coerced plaintiff PHILLIP DOYLEY, after abducting him, to use his telephone to make calls his son so as to entice him to return home; and continued to hold the two adult plaintiffs and the infant plaintiff captive until plaintiff PHILLIP DOYLEY's son arrived at the subject premises.

76.     As a result of the aforementioned violation of rights guaranteed to the plaintiffs by the fourth and fourteenth amendments to the Constitution of the United States, the individual defendants hereto deprived plaintiffs of their liberty and free will; improperly searched and destroyed items of their personal property; and caused all plaintiffs, in particular the infant plaintiff, to suffer extreme mental anguish.

77.     As a result of the aforementioned denial of rights guaranteed to them by the fourth and fourteenth amendments to the Constitution of the United States, plaintiffs have been damaged in an amount sufficient to compensate them for their injuries as enumerated hereinabove, and, in addition, seek punitive damages against the individual defendants.

<u>**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST THE INDIVIDUAL DEFENDANTS AND
THE CITY OF NEW YORK**</u>
**(False Arrest and False Imprisonment)**

78.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "77" hereinabove as if more fully set forth at length herein.

79.     On or about April 13, 2019, at the premises bearing the address of 135-16 221st Street, Springfield Gardens, County of Queens, City and State of New York, the individual defendants, without probable cause therefor, forcibly, wrongfully and unlawfully arrested plaintiffs by handcuffing plaintiffs PHILLIP DOYLEY and LATOYA DOYLEY; confining plaintiff LATOYA DOYLEY and the infant plaintiff K.G. to a room in the subject premises; confining plaintiff PHILLIP DOYLEY to a Police Department motor vehicle and not permitting any of them to leave their places of confinement until plaintiff PHILLIP DOYLEY had complied with unlawful, improper and coercive demands made by two of the individual defendants.

80.   At the time they committed the aforementioned acts of false arrest and false imprisonment, the individual defendants were acting within the scope of their employment by defendant CITY OF NEW YORK.

81.   By reason of the false arrest and false imprisonment committed against them by the individual defendants, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiffs PHILLIP DOYLEY, LATOYA DOYLEY and the infant plaintiff K.G. suffered a deprivation of their liberty and extreme mental anguish.

82.   As a result of the aforementioned acts of false arrest and false imprisonment committed against them by the individual defendants, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiffs have been damaged in an amount sufficient to compensate them for their injuries as enumerated hereinabove, and, in addition, seek punitive damages against the individual defendants.

WHEREFORE, plaintiffs, PHILLIP DOYLEY and LATOYA DOYLEY, individually and as parent and natural guardian of K.G., an infant under the age of fourteen years, demand judgment against defendants, DETECTIVE BRANDON AGOSTO, Shield No. 1084, DETECTIVE RAMON GARCIA, Shield No. 6082, DETECTIVE ETASHAM KHAN, Shield No. 2329, CAPTAIN RODERICK DANTINI,  DETECTIVE HOWARD KWOK, Shield No. 4766, DETECTIVE DEREK SAMBOLIN, Shield No. 6902, DETECTIVE VINCENT FERRANTE, Shield No. 6560, DETECTIVE EDWARD WASHA, Shield No. 4252, DETECTIVE WARREN BROWN, Shield No. 4570, CAPTAIN PAUL MUGGEO, DETECTIVE STEPHEN JONES, Shield No. 790, as follows:

FIRST CAUSE OF ACTION:  An amount sufficient to compensate them for their injuries as enumerated hereinabove, and, in addition, seek punitive damages against the individual defendants; and

SECOND CAUSE OF ACTION:  An amount sufficient to compensate them for their injuries as enumerated hereinabove, and, in addition, seek punitive damages against the individual defendants.

In addition, plaintiffs demand the costs and disbursements of this action, including their attorney's fees, pursuant to 42 U.S.C. §1988.

Dated:  Kew Gardens, New York
         February 13, 2021

ALAN D. LEVINE, ESQ.
Attorney for Plaintiffs
80-02 Kew Gardens Road, Suite 307
Kew Gardens, New York 11415
(718) 793-6363
Our File No. 2450